Wilfred J. CRUZ, Sr., Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF HUMAN SERVICES,
Respondent.

No. 83–1296.

District of Columbia Court of Appeals.

Submitted May 29, 1984.

Decided August 9, 1984.

Wilfred J. Cruz, Sr., pro se.

Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., were on the brief for respondent.

Before NEBEKER and TERRY, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEBEKER, Associate Judge:

Petitioner challenges the decision by the District of Columbia Department of Human Services (DHS) that terminated his receipt of public assistance. We remand for a determination of the amount that petitioner's public assistance would be reduced as a result of his receipt of federal educational assistance.

Petitioner is a 51-year-old carpenter, disabled due to a back injury, who returned to school in order to earn an electrical engineering degree from the University of the District of Columbia. He was certified as eligible for and in fact received general public assistance (GPA) from the District as well as a Basic Educational Opportunity Grant (BEOG) and a Supplemental Educational Opportunity Grant (SEOG) from the federal government. During the process of recertification for GPA, petitioner was asked by DHS to submit an itemized accounting of both his educational financial assistance and his educational expenses. DHS did not receive some of the requested expense data. DHS subsequently sent petitioner a notice of termination of his public assistance as of April 30, 1983. Upon his request, a hearing was conducted by DHS on June 20, 1983. The petitioner, appearing without legal counsel, basically argued

that he refused to submit this unreported data in order to challenge what he felt were unfair and illogical DHS regulations. Specially, he argued that DHS reduced his GPA because of his receipt of federal educational financial assistance. However, he argued his GPA was designed for and was spent on living expenses while the federal money was used for the educational costs he incurred. Thus, he argued, the presumed overlap did not exist in fact, and the reduction in his public assistance was both not based on fact and was unfair. The Hearing Examiner appeared to agree with petitioner's assertion that the amount of general public assistance received could be reduced because of receipt of federal educational assistance. The Examiner then laid aside that issue, and the remainder of the hearing concentrated basically on whether petitioner had reported or was willing at the time of the hearing to report the missing information. Petitioner neither had reported it previously nor was willing at the hearing to do so.

By his report dated August 16, 1983, the Hearing Examiner found: (1) petitioner had failed to supply all the necessary information; (2) but DHS could have computed his eligibility based on information he had previously supplied. The Examiner recommended that the termination be reversed, that DHS perform the necessary additional computations, and that petitioner be given time to submit any additional statements he desired. By letter dated November 1, 1983, DHS issued its decision which petitioner now challenges before us. DHS adopted the Examiner's factual findings but revised his recommendation, reasoning that failure to file the data was grounds for termination, pursuant to § 5380 of the General Public Assistance Handbook and § 529 of D.C.Law 4–101.

Before us now, petitioner challenges the termination of his GPA and the fairness of any reduction in the GPA he might have received if he had supplied the information.

As to the termination of petitioner's GPA, he failed to comply with the statutorily prescribed reporting requirements. D.C. Code § 3–205.35 (Supp.1984). DHS's termination action appears justified. *Id.* §§ 3–205.31, –205.57.

We now need to address whether the petitioner's refusal to furnish the information and the consequent termination of his public assistance preclude our review; otherwise stated, should we hold that the petitioner could only challenge the reduction regulation by supplying the information and then challenging the DHS action reducing his general public assistance? Although petitioner appears to have a right to a hearing on his substantive challenge, D.C.Code § 3–210.1 (Supp.1984) (applicant or recipient, aggrieved by action is entitled to a hearing), we cannot ignore the fact that petitioner appeared before DHS and this court without the aid of a lawyer. Not surprisingly, appearances without lawyers are not uncommon in public assistance hearings. And we do not want to create pressure for unwarranted change in the present state of affairs. Moreover, we are cognizant of the difficulties of nonlawyers appearing *pro se* or without benefit of counsel and arguing administrative law questions. *Cf. Cosgrove v. United States*, 411 A.2d 57, 58–59, (D.C.1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), and *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). Finally, the issue was fairly raised and made part of the record at the hearing. Therefore, although petitioner may have violated certain reporting requirements, we do not feel that his action deprives us of power to reach his substantive argument.

Petitioner argues that the GPA and federal assistance are designed and used for two different purposes: GPA went for his current living expenses while the educational assistance went only for educational expenses. He cites as authority regula-

tions promulgated under Title IV of the Social Security Act, which direct that educational grants or loans administered by the Commissioner of Education are to be disregarded as income when GPA is computed. 45 CFR 233.20(a)(4)(ii)(d), *but see* D.C.Code § 3–205.13 (Supp.1984). DHS states that these regulations do not apply to the petitioner and that the controlling law is D.C.Code §§ 3–205.13(3), –204.1, –205.8, and –205.29 (Supp.1984).

Although § 3–205.13(3) directs that educational loans or grants will be disregarded as income, the provision does not apply to GPA computations. Section 3–205.29 appears to apply to petitioner's case, and this provision states that assistance computations shall not consider as income "loans or grants obtained [for] and used under conditions that preclude their use for current living costs."

We can find only passing reference in respondent's brief on appeal as to whether BEOG and SEOG awards include "current living costs." (Respondent's Brief at 5, citing *Grove City College v. Bell,* —— U.S. ——, —— n. 13, 104 S.Ct. 1211, 1217–18 n. 13, 79 L.Ed.2d 516 (1984)). However, our research reveals that BEOG (also called Pell Grants) allowed for "room and board," 34 CFR 690.53 (1983) and SEOG similarly provided during the academic year in dispute, 1982–83. *Id.* 676.11(c). It therefore appears that petitioner's basic argument is refuted by the applicable federal regulations. However, the record is devoid of information as to how much of the living expenses received as GPA would be deducted because of the federal assistance received under the room and board category. We, therefore, remand for the limited purpose of such a calculation. We express no opinion as to whether the ratio of GPA reduced compared to federal room and board received comports with the power vested in the Mayor under D.C.Code § 3–208 (1981).

*Remanded.*